SMITH, Superintendent of Banks, et al, Appellants, v. SIOUX FALLS TRUST & SAVINGS BANK, Respondent.

(236 N. W. 271.)

(File Nos. 6592-6667. Opinion filed April 28, 1931.)

*Lyon, Bradford & Grigsby,* of Sioux Falls, for Appellants.
*Boyce, Warren & Fairbank,* of Sioux Falls, for Respondent.

CAMPBELL, J. The present general form and structure of the banking law of this state originated as chapter 102, Laws 1915,

which was carried forward into the Revised Code of 1919 without substantial change as sections 8917 to 9031, inclusive.

Section 8917, R. C. 1919, provides: "The department of banking and finance, heretofore established, shall continue to have charge of the enforcement of the laws relating to banks, trust companies, building and loan associations and the banking business in this state, and shall be under the management and control of the superintendent of banks."

According to the general scheme of that law, there were two situations when the superintendent of banks might take possession and control of the affairs and assets of a bank. One of these situations was where the bank voluntarily placed its affairs in the hands of the superintendent of banks, which was provided for by section 8976, R. C. 1919, reading as follows: "Any bank doing business under this chapter may place its affairs and assets under the control of the superintendent of banks by posting a notice on its front door as follows: 'This bank is in the hands of the superintendent of banks.' Immediately upon posting such notice such bank shall notify the superintendent of banks of such action. The posting of such notice or taking possession of any bank by the superintendent of banks shall be sufficient to place all its assets and property, of whatever nature, in the possession of the superintendent of banks, and shall operate as a bar to any attachment proceedings, and any attachment lien against such property, acquired within thirty days next preceding the taking of such possession by such superintendent, shall be thereby released and dissolved. For each day the superintendent of banks shall be in possession of any bank under the provisions of this section, such bank shall pay a fee of five dollars."

The other was where the superintendent might on his own motion take possession of a bank. This situation was provided for by section 8925, R. C. 1919, reading in part as follows: "Whenever it shall appear to the superintendent of banks that any bank or trust company subject to his supervision has violated its charter or any law of the state, or is conducting its business in an unsafe or unauthorized manner, or if the capital stock of any such bank or trust company is impaired, or if any such bank or trust company shall refuse to submit its books, papers and affairs to the inspection of any examiner, or if any officer thereof shall refuse

to be examined upon oath touching the affairs of any such bank or trust company, or if any such bank or trust company shall suspend or refuse to make payment of its obligations, or if from any examination or report provided for by law the superintendent of banks shall have reason to conclude that such bank or trust company is in an unsound or unsafe condition to transact the business for which it is organized, or that it is unsafe and inexpedient for it to continue business, or if any such bank or trust company shall neglect or refuse to observe any order of the superintendent of banks specified in the preceding section, such superintendent may forthwith take possession of the property and business of such bank or trust company and retain such possession until such bank or trust company shall resume business or its affairs be finally liquidated. * * * "

Section 8926, R. C. 1919, provided that any bank deeming itself aggrieved when the superintendent of banks of his own motion took possession of its affairs might review the matter in circuit court.

The rights, powers, and duties of the superintendent of banks upon coming into possession of any bank, whether the same was voluntarily turned over to him under the provisions of section 8976, or whether he took possession thereof of his own motion under the provisions of section 8925, are quite fully specified in the statute. By section 8927, R. C. 1919, the superintendent of banks, upon taking possession of the property and business of any bank, is required to give immediate notice of that fact by letter or telegram to all banks holding any of the assets of the bank so taken over. By section 8929, R. C. 1919, the superintendent is authorized to appoint examiners in charge to assist him in liquidating the affairs of a bank so taken over. By section 8931, R. C. 1919, he is required immediately to make a duplicate inventory of the assets of the bank, and by section 8932, R. C. 1919, he is required within thirty days to make a financial statement to stockholders and all known creditors. By section 8933, R. C. 1919, he is required to publish notice to creditors, etc., and machinery is set up for payment of dividends and other matters of that sort. Section 8928, R. C. 1919, requires the superintendent of banks, upon taking possession of a bank, to conserve its assets and business and to proceed to liquidate its affairs, and reads as follows: "Upon taking

possession of the property and business of any bank or trust company, the superintendent of banks shall be authorized to collect all money due to such bank or trust company and to do such other acts as are necessary to conserve its assets and business, and shall proceed to liquidate the affairs thereof as provided in this chapter. He shall collect all debts due and claims belonging to it and may upon order of the circuit court, after having made application therefor, sell or compound any or all bad or doubtful debts, and on like order may sell all or any of the real and personal property of such bank or trust company on such terms as the court shall direct; provided, that all sales shall be made on competitive bids after advertisement for ten days in the official papers in the county in which the property is located. All money so collected by the superintendent of banks shall be, from time to time, deposited in one or more state banks or trust companies and, in case of the suspension or insolvency of the depositary, such deposits shall have preference over all other deposits."

Sections 9005 to 9031, R. C. 1919 (originating as article 3 of chapter 102, Laws 1915), is the so-called "Bank Guaranty Law" which created the depositors' guaranty fund commission and set up a scheme for guaranty of bank deposits. The provisions of this law were recently analyzed and discussed by this court at considerable length in State ex rel Attorney General v. Smith et al, 58 S. D. —, 234 N. W. 764. For the purposes of this case, it is material only to point out that nowhere in that law was the depositors' guaranty fund commission endowed with any power or authority over insolvent banks or the liquidation thereof. By the Guaranty Fund Law assessments for the purposes of the guaranty fund were levied upon the various state banks from time to time, but the amount of such assessments were not required to be remitted to the guaranty fund commission or to any one else until needed for use. The theory of the law was that until required such money should be segregated in the assessed banks and set apart therein to the credit of the guaranty fund. With reference to such assessments levied (and presumably segregated) but not called for and remitted, the Guaranty Fund Law by section 9019, R. C. 1919, provided as follows: "Whenever any bank doing business in this state under the provisions of this chapter shall suspend payment or become insolvent, the amount of money standing to the credit

of the depositors' guaranty fund on deposit in such bank shall be a first lien upon the assets of such institution; except funds deposited in such institution by the superintendent of banks and belonging to the estate of any insolvent institution, which shall have preference over all other claims."

The condition of the law previously outlined with reference to the taking over of a bank by the superintendent of banks continued until 1921, when the Legislature, by chapter 136, Laws 1921, undertook to authorize the superintendent of banks with the advice and consent of the guaranty fund commission under certain circumstances to take over and operate a bank, not for liquidation, but as a going concern.

Section 1 of this law was as follows: "Whenever it shall appear to the Guaranty Fund Commission that the business of any bank is being conducted in an unsafe or unauthorized manner, or that it is unsafe or inexpedient to continue business, or that its reserve is below the legal requirements, the Superintendent of Banks may, with the advice and consent of the Guaranty Fund Commission, by himself or his Deputy or any Examiner designated by him for that purpose, take charge and control of the property and business of such bank, and manage it as a going concern. He, or such Deputy or Examiner, may perform all the duties and powers of the officers and directors of such bank while so managing the same, and all salaries and expenses of the Department of Banking and Finance in connection therewith shall be paid by the bank."

Section 2 of the act provided, subject to certain restrictions, that, when the superintendent of banks was operating a bank as a going concern under this statute, the guaranty fund commission might deposit in such bank, within certain limits, a portion of money on hand in the guaranty fund. It was apparently the theory of the law that money on hand in the guaranty fund might be employed, when deemed expedient, to "tide over" banks which were fundamentally sound but temporarily suffering by reason of depleted reserve or other transitory bad conditions, with the safeguard that during such period the affairs of such bank should be conducted and operated by the superintendent of banks.

In January, 1924, the banking situation in South Dakota was becoming critical. During the period March 16, 1923, to January

12, 1924, forty-one state banks had failed. On, or a day or two prior to, January 12, 1924, the Sioux Falls National Bank, one of the oldest and largest banks in the city, closed, which immediately caused heavy withdrawals from other banks in Sioux Falls. One of the state banks then operating in Sioux Falls was the Sioux Falls Trust & Savings Bank. On Monday, January 14, 1924, the superintendent of banks was out of the state, but all members of the depositors' guaranty fund commission were in Sioux Falls, and the deputy superintendent of banks was there or came the next day. The Sioux Falls Trust & Savings Bank on that day was not paying checks in full, but was limiting the payment upon any single check or draft to $5.00, regardless of the amount thereof. The members of the depositors' guaranty fund commission were in conference the greater part of the day of the 14th with the officers and directors of this bank. About 3:30 o'clock in the afternoon the directors of the Sioux Falls Trust & Savings Bank, passed a resolution as follows: "Whereas, the reserve of the Sioux Falls Trust & Savings Bank has fallen below the legal requirements, be it resolved by the Board of Directors of the Sioux Falls Trust & Savings Bank that the Superintendent of Banks of the State of South Dakota, with the advice and consent of the Guaranty Fund Commission, be requested to take charge and control of the property and business of said bank and to manage it as a going concern."

Immediately thereafter, and pursuant to that resolution, the guaranty fund commission directed one Ward (a state bank examiner whom the commission had requested to remain in readiness in the city of Sioux Falls to be instantly available if his services should be desired) to take charge of the Sioux Falls Trust & Savings Bank, and he immediately proceeded so to do.

On the same afternoon Ward telegraphed banks with whom the Sioux Falls Trust & Savings Bank had funds on deposit as follows:

"The Sioux Falls Trust and Savings Bank Sioux Falls South Dakota was taken over by the Superintendent of Banks of South Dakota as a going concern at three thirty P M January Fourteenth Nineteen Twenty Four Stop refuse payment on all drafts stop balance account and send statement with cancelled vouchers together with draft for whatever balance shows.

"John Hirning Superintendent of Banks
"By W. E. Ward, Examiner."

On that same day or the next day the Guaranty Fund Commission issued for publication, and there was published in the newspapers of Sioux Falls, the following statement:

"The Depositors' Guaranty Fund Commission of South Dakota consisting of Wm. Hoese, M. Plin Beebe and C. H. Lien, has been in session at Sioux Falls with the Deputy Superintendent of Banks, considering the local bank situation.

"On account of the withdrawals following the closing of the Sioux Falls National Bank, the Depositors' Guaranty Fund Commission found that the reserve of the Sioux Falls Trust & Savings Bank was below the legal requirements. The Deputy Superintendent of Banks with the advice and consent of the Depositors' Guaranty Fund Commission, and acting pursuant to Chapter 136 of the Session Laws of South Dakota, 1921, has taken charge and control of the property and business of the Sioux Falls Trust & Savings Bank and will manage it as a going concern. This means that the Sioux Falls Trust & Savings Bank will not be closed, and that it will not be liquidated, but that its business will be continued and for the present it will be managed by the State Superintendent of Banks, under the Depositors' Guaranty Fund Commission.

"Until the arrival of John Hirning, Superintendent of Banks, who is on his way to South Dakota from California where he has been in attendance at the bedside of his dying son, the Sioux Falls Trust & Saving Bank, while it will remain open for business, will not make any payments on deposits. It is expected that shortly after the arrival of Superintendent Hirning arrangements will be made by which the bank reserve will be brought up to the legal requirements and the bank can then continue in business as usual."

Very shortly thereafter Ward sent out to all correspondent banks having accounts in the Sioux Falls Trust & Savings Bank the following statement:

"The Depositors' Guaranty Fund Commission of South Dakota, consisting of Wm. Hoese, M. Plin Beebe and C. H. Lien, has been in session at Sioux Falls with the Deputy Superintendent of Banks, considering the local bank situation.

"On account of the withdrawals following the closing of the Sioux Falls National Bank, the Depositors' Guaranty Fund Commission found that the reserve of the Sioux Falls Trust & Sav-

ings Bank was below the legal requirements. The Deputy Superintendent of Banks with the advice and consent of the Depositors' Guaranty Fund Commission, and acting pursuant to Chapter 136 of the Session Laws of South Dakota, 1921, has taken charge and control of the property and business of the Sioux Falls Trust & Savings Bank and will manage it as a going concern. This means that the Sioux Falls Trust & Savings Bank will not be closed, and that it will not be liquidated, but that its business will be continued and for the present it will be managed by the State Superintendent of Banks, under the Depositors' Guarany Fund Commission.

"Until the arrival of John Hirning, Superintendent of Banks, who is on his way to South Dakota from California where he has been in attendance at the bedside of his dying son, the Sioux Falls Trust & Savings Bank, while it will remain open for business, will not make any payments on deposits. It is expected that shortly after the arrival of Superintendent Hirning arrangements will be made by which the bank reserve will be brought up to the legal requirements and the bank can then continue in business as usual.

"The Sioux Falls Trust & Savings Bank under supervision of John Hirning, Superintendent of Banks, is accepting deposits in trust and allowing depositors to check against the trust funds by checks marked 'Trust Account.' This was decided on by the Guaranty Fund Commission as a means, if possible, of bolstering up the reserve. Under this plan the Trust deposits will be paid on their demand at any time and is used as a last resort to help not only the Sioux Falls Trust & Savings Bank, but to help the State of South Dakota, in this most tragic moment.

"If you have a heart in you; if you hold any kind of feeling for the state where you made what you have, by all means send us what you can spare. Don't stop to think of yourself alone,—remember there are 100,000 people in South Dakota who are watching us and praying for the outcome of this appeal. For South Dakota, do your best and let us hear from you, not next week, but NOW.

"Every effort is being made to keep the bank open and it is now undergoing a rigid examination.

"As above stated, all deposits made after January 15th, will be held in trust in cash by Banking Department and your draft will be honored drawn on such trust account, provided it is so

indicated on your draft. In case bank should close, trust funds will be returned to you.

"John Hirning, Superintendent of Banks,
"By W. E. Ward, Examiner."

After Ward took charge of the bank on January 14th, no payments were made on deposits then in the bank, and Ward proceeded to get in as rapidly as he could amounts then outstanding and due to the bank in the same fashion that would be done if the bank had simply been closed for liquidation in the usual manner. No closed sign was placed on the door, however, and the bank continued to receive new deposits on the theory of "deposits in trust" mentioned in the foregoing notice, and to honor checks and drafts against such new deposits in the usual fashion. It is the custom of the superintendent of banks immediately upon taking charge of a bank for liquidation and placing an examiner therein for purposes of liquidation to designate such examiner as "examiner in charge" and issue him a written certificate of appointment.

In the instant case Ward was not designated as "examiner in charge" until April 17th. No notice to creditors was given until practically the end of March. From January 14th until the middle of April Ward conducted all transactions in connection with the matter under the designation "John Hirning, Superintendent of Banks, by W. E. Ward, Examiner." From January 14th on until some time in April Ward was getting in such collections as he could from banks and others on amounts due the Sioux Falls Trust & Savings Bank as of date of January 14th. He was making no payments on deposit liabilities of the Sioux Falls Trust & Savings Bank existent as of date of January 14th. He was also conducting a sort of quasi banking business under the trust deposit scheme. In connection with the matter of collecting in amounts due the Sioux Falls Trust & Savings Bank on January 14th from correspondent banks, Ward established new correspondent banks; his testimony in that regard being as follows: "I established new correspondent banks at that time. Accounts were opened on the 15th in the Commercial and Savings Bank of Sioux Falls, First State Bank of Sioux Falls, Dakota Trust and Savings Bank of Sioux Falls, and International State Bank of Sioux Falls. I later opened accounts with other banks, being with the Pennington County Bank of Rapid City, Bank of Summit, Summit, South Da-

kota, Bank of Ipswich, Stock Yards National Bank of Chicago and Western National Bank of Minneapolis. In these banks I deposited liquidation funds and trust funds. We had no separate accounts for what we called liquidation funds and trust funds, they were all mingled in the same account."

From January 15th forward Ward was receiving proceeds of collections of various sorts due the Sioux Falls Trust & Savings Bank on January 14th. These proceeds he refers to in his testimony as "liquidation funds." He was also receiving and disbursing deposits which he refers to in his testimony as "trust funds." He did not maintain separate accounts with correspondent banks for the liquidation funds and trust funds, but commingled them. Between January 15th and January 24th, inclusive, Ward deposited in the account which he had opened on January 15th with the Commercial Trust & Savings Bank the total amount of $141,652.39, as to which it is stipulated in this case as follows:

"Of the amount aforesaid, the sum of $92,941.84 was received by the Sioux Falls Trust & Savings Bank as the proceeds of business transacted prior to and including the 14th day of January, 1924, and for the purpose of designation only, called hereafter Liquidation Funds.

"That of the said amount so deposited, the sum of $35,669,41 was received by the Sioux Falls Trust & Savings Bank subsequent to the 14th day of January, 1924, and for the purposes of designation herein, are called Trust Funds."

During this same period there were withdrawals from this account in various amounts, at various dates, and for various purposes. On January 24, 1925, it came to Ward's attention that the Commercial & Savings Bank would not open for business on the morning of January 25th. After banking hours on the 24th, Ward went to the Commercial & Savings Bank and demanded and received all cash and checks in the bank; the aggregate amount thereof being $9,160.05. This amount in cash and checks Ward took back with him to the Sioux Falls Trust & Savings Bank and entered the same as a credit upon the balance owing from the Commercial & Savings Bank to the Sioux Falls Trust & Savings Bank, leaving the balance due on that account (after allowing for certain subsequent minor adjustments between the two banks) $112,628.21. Subsequently there was credited upon that account

as the proceeds of certain collateral (the propriety of which credit need not here be determined) the sum of $22,546.69, leaving a balance upon the account of $90,081.52.

On January 25, 1924, the superintendent of banks of this state took charge of the Commercial & Savings Bank of Sioux Falls for purposes of liquidation in the usual manner under the control and superintendence of the circuit court of Minnehaha county, S. D.

Thereafter the superintendent of banks in connection with the matter of the liquidation of the Commercial & Savings Bank of Sioux Falls reported to the circuit court of Minnehaha county that certain preferred claims had been allowed against the assets of Commercial and Savings Bank. Included in the list of such preferred claims was the claim of Sioux Falls Trust & Savings Bank, W. E. Ward, examiner, original amount, $112,628.21, amount paid, $22,546.69, balance due, $90,081.52. And the superintendent of banks alleged that there was on hand sufficient cash to pay said preferred claims in full, and prayed that an order to show cause be issued requiring all persons interested to show cause why an order should not be made by the court for the payment of said preferred claims, and that notice be given as required by law, etc.

Order to show cause was accordingly made and entered and notice given, and at the return day fixed in said order appellants Fantle, Solie, Olson, and Carlson appeared and filed objections in writing to the allowance of this particular claim as follows:

"The undersigned stockholders of record and depositors in the Commercial and Savings Bank of Sioux Falls, South Dakota, object to the petition of F. R. Smith, Superintendent of Banks of the State of South Dakota, filed herein on August 9, 1926, for an order directing the payment to the Sioux Falls Trust & Savings Bank of the sum of $90,081.52, as a preferred claim against said Commercial & Savings Bank under the provisions of Section 9019, of the South Dakota Revised Code of 1919, and object to the allowance thereof, for the following reasons:

"I. That the said monies were deposited by the Sioux Falls Trust and Savings Bank in said Commercial & Savings Bank prior to the time that the said Sioux Falls Trust & Savings Bank was closed and taken in charge by the Superintendent of Banks for the purpose of liquidation.

"II. That no part of said monies were the property of the Sioux Falls Trust & Savings Bank as an insolvent institution, but were monies deposited with the Sioux Falls Trust & Savings Bank, and subsequently deposited by it with said Commercial & Savings Bank, as a going concern."

The court proceeded to hear said matter and took testimony at length, and ultimately made and filed written findings of fact and conclusions of law as follows:

"I. The Court finds that the Sioux Falls Trust & Savings Bank was a banking corporation organized under the banking laws of the State of South Dakota, with its place of business at Sioux Falls, South Dakota, and that on the 14th day of January, 1924, it became and was insolvent, and that on that day it was taken possession of by the banking department of the State of South Dakota, and was closed, and liquidation of the said bank began on the 15th day of January, 1924, and is still in progress, and that ever since the 14th day of January, 1924, the said bank has been in possession of the Superintendent of Banks of the State of South Dakota, and in the process of liquidation.'

"III. That between the 15th day of January and the 25th day of January, 1924, John Hirning who was then Superintendent of Banks of the State of South Dakota, deposited in the Commercial & Savings Bank, which was then an open state bank and a going concern, the sum of $141,652.39, all of which money belonged to the estate of the Sioux Falls Trust & Savings Bank, which was an insolvent banking institution, and then in possession of the Superintendent of Banks of the State of South Dakota and in the process of liquidation, and that the deposit was made and the account was carried upon the books of the Commercial & Savings Bank, in the name of 'John Hirning, Superintendent of Banks for the Sioux Falls Trust and Savings Bank.'

"IV. That between the 15th day of January and the 25th day of January, 1924, the Superintendent of Banks drew out of the said deposit in the Commercial & Savings Bank, the sum of $28,-908.92, leaving a balance in that account on the 25th day of January, 1924, when the Commercial & Savings Bank closed, of $112,-743.46.

"V. That the Sioux Falls Trust and Savings Bank, in the time provided in the notice of the Commercial & Savings Bank, filed a preferred claim for the amount of its said deposit, with the Examiner in Charge of the Commercial & Savings Bank, and the said claim was allowed and approved by the Superintendent of Banks of the State of South Dakota, as a preferred claim, and a guarantee fund certificate was issued to W. E. Ward, Examiner in Charge of the Sioux Falls Trust & Savings Bank, upon the said amount, on or about the 24th day of September, 1924.

"VI. That on or about the 30th day of August, 1924, there was paid to the Sioux Falls Trust & Savings Bank and the Examiner in Charge thereof, upon said claim, the sum of $22,546.69, leaving a balance now due and payable, from the Commercial & Savings Bank, to the Sioux Falls Trust & Savings Bank, upon said account, in the sum of $90,081.52.

"VII. That this sum of $90,081.52 is now held by the Examiner in Charge of the Commercial & Savings Bank, and belongs to the estate of the Sioux Falls Trust & Savings Bank, and is a preferred claim over all other claims against the Commercial & Savings Bank.

"Conclusions of Law:

"I. That J. E. Witten, Examiner in Charge of the Commercial & Savings Bank, of Sioux Falls, South Dakota, has in his possession, the sum of $90,081.52, which was deposited in the Commercial & Savings Bank, prior to the closing of that bank, by the Superintendent of Banks of the State of South Dakota, and which belongs to the estate of Sioux Falls Trust & Savings Bank, which was an insolvent institution, in the possession of the Superintendent of Banks of the State of South Dakota, and in process of liquidation, at the time said deposit was made, and that the Sioux Falls Trust & Savings Bank is entitled to a preferred claim against the Commercial & Savings Bank for the amount thereof, which claim has preference over all other deposits and all other claims, and that the Superintendent of Banks of the State of South Dakota is entitled to an order of this Court authorizing him to turn over to the Sioux Falls Trust & Savings Bank, the sum of $90,081.52, out of the funds now on hand in the Commercial & Savings Bank, in satisfaction of said claim."

On these findings and conclusions the court entered its order for the payment of said $90,081.52 as a preferred claim out of funds on hand belonging to the insolvent estate of the Commercial & Savings Bank, from which order the objectors above named have appealed.

Desiring to review in this court the sufficiency of the evidence to sustain the findings of the trial court and being doubtful as to procedure, the objectors also moved in the trial court for a new trial, and have likewise appealed from an order denying such motion, and by order and permission of this court, the two appeals have been here consolidated. No procedural questions are raised by either party, and the propriety or necessity of making findings and conclusions on an application for an order is not here in issue.

All parties concede that, if respondent in this case is a preferred creditor of Commercial & Savings Bank, such preference must exist because of a specific statute creating the preference, and not otherwise. Appellants maintain that the money in question was deposited in the Commercial & Savings Bank by the examiner Ward at a time when he was operating the Sioux Falls Trust & Savings Bank as a going concern under the provisions of chapter 136, Laws 1921. Based upon this contention as to what Ward, as a matter of fact, was doing in his operations regarding the Sioux Falls Trust & Savings Bank (the validity of which fact contention we will later examine), appellants further contend as a matter of law that there is nothing in the statutes of this state to create any preference for deposits made in other banks by the superintendent of banks of the funds of a bank which he is operating as a going concern under the provisions of chapter 136, Laws 1921. We do not understand respondent seriously to question this view as a matter of law. And upon this legal proposition we think appellants are right. Chapter 136, Laws 1921, authorizes the superintendent of banks, under certain circumstances, with the advice and consent of the guaranty fund commission, to take charge and control of the property and business of a bank and to manage it as a going concern. We do not find either in chapter 136, Laws 1921, or elsewhere any provision of law creating any preference for moneys of a bank which the superintendent of banks, while he is managing and operating said bank as a going concern, may deposit in other banks.

■ Respondent maintains that from January 14th to 25th, inclusive, while the Sioux Falls Trust & Savings Bank was in possession of the examiner Ward, regardless of the nature or purpose of Ward's possession, the bank was an insolvent bank as a matter of fact, and therefore respondent maintains that deposits of funds of that bank made by Ward in the Commercial & Savings Bank during that period are preferred claims against the Commercial & Savings Bank under the provisions of section 9019, R. C. 1919, which we have previously quoted, and which for convenience we here repeat as follows: "Whenever any bank doing business in this state under the provisions of this chapter shall suspend payment or become insolvent, the amount of money standing to the credit of the depositors' guaranty fund on deposit in such bank shall be a first lien upon the assets of such institution; except funds deposited in such institution by the superintendent of banks and belonging to the estate of any insolvent institution, which shall have preference over all other clamis."

Respondent maintains that the last clause of this section creates a general preference for funds deposited in a bank by the superintendent of banks "belonging to the estate of any insolvent institution." We are not able to see that any such preference is created by this section. Section 9019 is a part of the Banking Law (sections 9005 to 9031) relating specifically to the depositors' guaranty fund. The purpose of section 9019 was to create a preferred claim in favor of the guaranty fund upon the failure of any bank to the extent of guaranty fund assessments previously levied against that bank and not yet remitted, which preferred claim was to be subsequent and junior only to the preferred claim for funds deposited by the superintendent of banks in accordance with the preference previously established by the Banking Law by the earlier section No. 8928, R. C. 1919. We think the last clause of section 9019 is merely an explanatory reference to the preference claim previously created by section 8928 to which the preference claim for guaranty fund assessments created by section 9019 was to be junior. We think, therefore, that the last clause of section 9019 creates no preference whatever, but is intended merely to refer to, and amount to a general description of, the preference previously created by section 8928. As to the precise nature and

extent of that preference thus referred to in section 9019, we must look to section 8928, which created it.

Section 8928 has been previously quoted in this opinion. The last sentence thereof is the sentence creating the preference, and we here repeate it as follows: "All money so collected by the superintendent of banks shall be, from time to time, deposited in one or more state banks or trust companies and, in case of the suspension or insolvency of the depositary, such deposits shall have preference over all other deposits."

Section 8928 refers to the duties of the superintendent of banks upon the taking over of a bank for liquidation under the only two methods known to our law at the time of the enactment of that section, that is, upon his own motion pursuant to section 8925, or by act of the bank pursuant to section 8976. Section 8928 provides that the superintendent of banks shall collect all money due to the bank, conserve its assets and business, and proceed to liquidate its affairs. The preference created by section 8928 is for deposits of "all money so collected." Seeking the antecedent of the word "so" in that phrase, we find that section 8929 by its terms contemplates that the superintendent of banks when proceeding to liquidate the affairs of a bank in his charge (either under section 8925 or under section 8976), may receive money from three sources: First, the collection of debts; second, the selling or compounding of bad or doubtful debts; and, third, the sale of real or personal property of such bank. We are of the opinion that the preference created by section 8928 must be held as a matter of law, to be limited to monies deposited by the superintendent of banks in other state banks which the superintendent of banks has received from collections, sale, or compounding of bad debts or sale of real or personal property of a bank in his hands for liquidation by virtue either of section 8925 or section 8976.

Respondent maintains that that was the situation in the instant case, and that as a matter of fact on January 14th Ward took over the Sioux Falls Trust & Savings Bank for liquidation, regardless of the resolution of the board of directors, and regardless of the statement of the guaranty fund commission as to the nature and purpose of such taking over, and respondent therefore argues that all money deposited by Ward in the Commercial & Savings Bank during the period from January 15th to 24th, inclusive, con-

stitutes a preferred claim against such Commercial & Savings Bank by virtue of the provision of section 8928.

We cannot entirely agree with respondent in this contention. We have just above stated our construction of section 8928 and the extent of the preference which we think is thereby established.

We come now to consider the nature of the possession and operation of the affairs of the Sioux Falls Trust & Savings Bank by Ward as representative of the superintendent of banks during the period January 14th to 24th. There is no question but that the directors turned over the bank for operation as a going concern under chapter 136, Laws 1921. There is no question but that the guaranty fund commission, who had no right whatever to be concerned with the taking over of a bank for liquidation, did concern themselves with this transaction and advertised that the taking over was for operation as a going concern under chapter 136, Laws 1921. Ward himself, in substance, advertised this to correspondent banks a day or two later by the notice sent out to them hereinbefore quoted. There is no question but that things were done in the operation of the affairs of this bank that could not possibly be justified and would be utterly without authority of law if the bank were merely taken over for liquidation. On the other hand, it is just as true that the bank was not in any full or complete sense operated as a going concern as ought to have been done if it were taken over under chapter 136, Laws 1921. Admittedly the situation was difficult, precarious, and critical at the time of this transaction. Undoubtedly all concerned were acting in good faith and endeavoring to meet the situation in the best manner possible. We think the true measure of the legal nature of Ward's possession and operation of the affairs of the bank during the period in question must be sought in the last analysis, not in what the directors said or thought, not in what the guaranty fund commission represented or believed, nor even in what Ward himself thought or believed or said he was doing, but rather in the effect which the law will give to what Ward actually did.

Looking at the matter in this light, regardless of what any of the parties concerned said about what they were doing or thought they were doing, it is clear that Ward did not take over and operate the Sioux Falls Trust & Savings Bank during the period from January 14th to 24th as a going concern. It is equally

true that, so far as concerns the affairs of the bank as of date of January 14th, Ward did substantially what should have been done had the superintendent of banks on January 14th closed said bank and taken it over expressly and specifically for liquidation under section 8925, R. C. 1919. In the instant case, however, in addition to proceeding to liquidate the affairs of the bank as of January 14th, Ward, with the advice and consent of the guaranty fund commission, and without any authority of law, proceeded to conduct a sort of quasi banking business in a limited fashion by accepting and dealing with the so-called trust deposits. The most regrettable feature of the transaction is doubtless the failure to maintain a strict segregation of the liquidation proceeds from the trust funds.

So far as concerns the affairs of the Sioux Falls Trust & Savings Bank as of January 14th, we think Ward on and after that date was liquidating the affairs of the bank. So far as concerns the accepting of the so-called trust deposits and dealing therewith, he was not liquidating the affairs of the bank.

We are therefore of the opinion that liquidation proceeds deposited by Ward in the Commercial & Savings Bank between the period of January 15th and January 24th constitute a preferred claim against the assets of the Commercial & Savings Bank to the extent, and to the extent only, that it is possible to establish that the same were deposited in, and not withdrawn from, said bank prior to the date of its closing on January 25th. There was no authority of law for the taking of the $9,000 cash and checks from the Commercial & Savings Bank after it closed on January 24th. Whether the subsequent credit was properly applied cannot be determined from this record.

We think the situation is this: The burden of proof is on respondent to establish the facts necessary under the statute affirmatively to show that its deposit claim against the Commercial & Savings Bank as it stood when that bank closed is a preferred claim. In other words, to show that said deposit at that time actually represented proceeds of liquidation of the Sioux Falls Trust & Savings Bank. To the extent that respondent can establish that fact, and no further, it is entitled to the preference claimed. How much, if any, of that deposit actually represented proceeds of liquidation may be difficult, if not impossible, to establish. If it cannot be satisfactorily and sufficiently established, the preference

cannot be allowed. It is not material that all trust deposits accepted by the Sioux Falls Trust & Savings Bank after January 14th have been returned and accounted for. The question in this case is, How much of the deposit in the Commercial & Savings Bank on the evening of January 24th can be definitely established to be proceeds of liquidation? If proceeds of liquidation which are preferred under the statute were so inextricably intermingled with the so-called trust funds which are not preferred that it is impossible to show the amount of liquidation proceeds actually represented in the deposit, then no preference can be allowed. On the other hand, if it can be affirmatively established that all or part of such deposit was, as a matter of actual fact, liquidation proceeds, then to the extent that such fact is established a preference should be allowed.

That matter cannot be determined by this court from the record before us, and apparently was not greatly considered in the trial court because of his view that the entire amount of the deposit was a preferred claim whether it originated in liquidation proceeds or trust funds.

The order appealed from is therefore reversed, and the cause remanded to the circuit court for further proceedings in harmony with the views herein indicated.

POLLEY, P. J., and ROBERTS and WARREN, JJ., concur.

RUDOLPH, J., deeming himself disqualified, not sitting.